UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNSON & JOHNSON, a New Jersey Corporation,<br><br>       Plaintiff/Counterclaim Defendant,<br><br>       – against –<br><br>GUIDANT CORPORATION, an Indiana Corporation,<br><br>       Defendant/Counterclaim Plaintiff. | No. 06 Civ. 7685 (RJS) |

# GUIDANT'S MEMORANDUM OF LAW IN OPPOSITION TO JOHNSON & JOHNSON'S MOTION IN LIMINE TO EXCLUDE DAMAGES EVIDENCE CONCERNING POST-BREACH EVENTS

Stuart J. Baskin
John Gueli
Daniel H.R. Laguardia
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
(212) 848-4744 (telephone)
(212) 848-7179 (facsimile)

David Boies
William S. Ohlemeyer
Jack Wilson
Ian M. Dumain
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
(914) 749-8200 (telephone)
(914) 749-8300 (facsimile)

*Attorneys for Defendant/Counterclaim Plaintiff Guidant Corporation*

**TABLE OF CONTENTS**

Abbreviations and Defined Terms ................................................................................................. iv
Preliminary Statement ...................................................................................................................... 1
ARGUMENT .................................................................................................................................... 3
    I.    Indiana Law Permits Use of Post-Breach Evidence to Prove Damages ........................... 3
    II.   Guidant's Use of Evidence Post-Dating An Alleged Breach Will Not Prejudice J&J ..... 8
    III.  Guidant Has Complied With Its Discovery Obligations and the Extreme Sanction of Exclusion Is Inappropriate. ........................................................................................... 10
Conclusion ..................................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Cases**

A. C. Becken Co. v. Gemex Corp.,
   314 F.2d 839 (7th Cir. 1963) ............................................................................................. 4

Babcock v. Rezak,
   No. 96–CV–0394E, 2002 WL 31654995 (W.D.N.Y. Nov. 6, 2002) ....................................... 13

Bic Corp. v. Far E. Source Corp.,
   23 F. App'x 36 (2d Cir. 2001) ............................................................................................... 9

Connersville Wagon Co. v. McFarlan Carriage Co.,
   76 N.E. 294 (Ind. 1905) ............................................................................................... 2, 3, 4

Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.,
   4 N.E. 3d 677 (Ind. Ct. App. 2014) .................................................................................. 4, 7

Crestwood Park, Inc. v. Apostal,
   431 N.E.2d 789 (Ind. 1982) .................................................................................................. 7

David v. Caterpillar, Inc.,
   324 F.3d 851 (7th Cir. 2003) .............................................................................................. 14

Fishman v. Wirtz,
   807 F.2d 520 (7th Cir.1986) .................................................................................................. 4

Indianapolis City Mkt. Corp. v. MAV, Inc.,
   915 N.E.2d 1013 (Ind. Ct. App. 2009) .................................................................................. 4

Irving v. Ort,
   146 N.E.2d 107 (Ind. Ct. App. 1957) .................................................................................... 4

Kenford Co. v. Erie Cnty.,
   493 N.E.2d 234 (N.Y. 1986) .................................................................................................. 6

L.H. Controls, Inc. v. Custom Conveyor, Inc.,
   974 N.E.2d 1031 (Ind. Ct. App. 2012) .................................................................................. 4

NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,
   664 N.E.2d 492 (N.Y. 1996) .................................................................................................. 8

Oscar Gruss & Son, Inc. v. Hollander,
    337 F.3d 186 (2d Cir. 2003) .................................................................................................5

Outley v. City of New York,
    837 F.2d 587 (2d Cir. 1988) ...........................................................................................12, 13

Patterson v. Balsamico,
    440 F.3d 104 (2d Cir. 2006) ...............................................................................................11

Sharma v. Skaarup Ship Mgmt. Corp.,
    916 F.2d 820 (2d Cir. 1990) .................................................................................................5

Shepard v. State Auto. Mut. Ins. Co.,
    463 F.3d 742 (7th Cir. 2006) ................................................................................................9

Sinclair Ref. Co. v. Jenkins Petroleum Process Co.,
    289 U.S. 689 (1933) ..............................................................................................3, 4, 6, 7

Topalian v. Hartford Life Ins. Co.,
    945 F.Supp.2d 294 (E.D.N.Y. 2013) ...................................................................................11

United States v. Am. Exp. Co.,
    10-CV-4496 NGG RER, 2014 WL 2879811 (E.D.N.Y. June 24, 2014) ....................................9

Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC,
    07 CIV. 5804 (GEL), 2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ............................................9

**Other Authorities**

22 Am. Jur. 2d Damages § 95 ........................................................................................................6

Fed. R. Civ. P. 26 .................................................................................................................. 10-11

Fed. R. Evid. 403 ..........................................................................................................................8

Restatement (Second) of Contracts § 344. ....................................................................................5

# ABBREVIATIONS AND DEFINED TERMS

| Boston Scientific | Boston Scientific Corporation |
| --- | --- |
| Brown | Meredith Mason Brown |
| Cornell | Bradford Cornell |
| CRM | Cardiac Rhythm Management |
| Ex. | Exhibit to the Declaration of Jack Wilson in Opposition to J&J's Motion in Limine to Exclude Damages Evidence Concerning Post-Breach Events, dated October 17, 2014 |
| FRE | Federal Rules of Evidence |
| Guidant | Guidant Corporation |
| J&J | Johnson & Johnson |
| J&J Ex. | Exhibit to the Declaration of Harold P. Weinberger in Support of J&J's Motion in Limine to Exclude Damages Evidence Concerning Post-Breach Events, dated October 10, 2014 |
| Jarrell | Gregg A. Jarrell |
| Joint Proposed Pretrial Order | Joint Proposed Pretrial Order dated October 10, 2014 |
| Joint Stip. | Joint Proposed Stipulations of Fact and Law (Exhibit A to Joint Proposed Pretrial Order dated October 10, 2014) |
| Merger Agreement | Amended and Restated Agreement and Plan of Merger among J&J, Shelby Merger Sub, Inc., and Guidant, dated as of November 14, 2005 |
| Mot. | J&J's Memorandum of Law in Support of Motion in Limine to Exclude Damages Evidence Concerning Post-Breach Events, dated October 10, 2014 |

Defendant Guidant submits this memorandum of law in opposition to Plaintiff J&J's motion to exclude damages evidence concerning events after Guidant's alleged breach of the Merger Agreement. Those events demonstrate that at the time of Guidant's alleged breach, Guidant was less valuable than either J&J or Boston Scientific believed.

## PRELIMINARY STATEMENT

J&J seeks to recover more than $4 billion in damages in this case (excluding nearly $3 billion in prejudgment interest). It claims that this amount is necessary to put it in the same economic position it would have been in if it had acquired Guidant, which J&J asserts would have occurred but for the breach of the Merger Agreement. But even though J&J bears the burden of proving damages, it tactically seeks to exclude probative evidence of Guidant's value based on a temporal limitation. That temporal limitation is not supported by the law.

J&J did not suffer any damages as a result of its failure to acquire Guidant. An award of damages is intended to return a party to where it actually would have been absent a breach. Courts applying Indiana law are not barred from considering available post-breach evidence to determine what damages, if any, are necessary to accomplish this goal.[1] J&J cites no Indiana authority to the contrary. Instead, J&J relies on cases supporting the unremarkable proposition that a plaintiff is entitled to damages equal to the actual value of performance at the time performance was due, notwithstanding later fluctuations in value. The evidence J&J seeks to exclude, however, is not being offered to show fluctuations in value—it is being offered to show that an opportunity to purchase Guidant was not worth what J&J once believed at the time of the alleged breach.

---

[1] See Section I, infra.

1

J&J concedes that it intended to purchase Guidant as a strategic acquisition and did not intend to resell it. In 2005 and the first days of 2006, J&J hoped that the CRM market sector would grow, technology would evolve, product liabilities would resolve, and a competitive landscape would be favorable. These were predictions that, however sophisticated, were ultimately optimistic speculation that a new business venture would be profitable. The Supreme Court of Indiana's century-old observation when rejecting a claim for uncertain profits remains apt: "Men are often most sanguine concerning the successful conclusion of their business ventures … unfortunately, however, it is a matter of common occurrence that schemes which prudent, cautious, and experienced business men have formulated with the utmost care, failed in the accomplishment of the expected rewards."[2]

Guidant will put forward evidence proving that J&J's hopeful predictions nine years ago were incorrect. J&J seeks to exclude that evidence, including the following:

- Boston Scientific SEC filings cumulatively showing billions of dollars of goodwill impairment charges attributable to Guidant's business;[3]

- Expert testimony from Guidant's valuation expert showing that when actual data is used in place of J&J's projections, J&J's own valuation methodology shows that acquiring Guidant would have produced a multi-billion dollar loss for J&J;[4] and

---

[2] Connersville Wagon Co. v. McFarlan Carriage Co., 76 N.E. 294, 297 (Ind. 1905) (internal quotation marks omitted).

[3] E.g., Ex. 1 (excerpts from 10-K filings, showing $2.613 billion goodwill impairments in 2009, $1.817 billion goodwill impairments in 2010, $697 million goodwill impairments in 2011, $748 million goodwill impairments in 2012, and $423 million goodwill impairments in 2013); see also J&J Ex. A (listing the exhibits to which J&J objects).

[4] Ex. 2, Cornell Aff. at ¶ 51-53; see also J&J Ex. B (March 9, 2011 Expert Report of Bradford Cornell).

2

- Court filings and news articles demonstrating that the Material Adverse Event J&J identified in 2005 related to the product recalls of Guidant's implantable defibrillators.[5]

J&J's motion to exclude Guidant's evidence is inconsistent with Indiana law and fundamentally unjust.  J&J would have this Court ignore relevant evidence proving that J&J seeks to take from Boston Scientific billions of dollars that J&J never lost.  J&J is of course free to argue at trial that its evidence pre-dating an alleged breach is superior to the evidence that has amassed since, but no principle of law or justice permits J&J to preclude consideration of Guidant's proof.  In the words of Justice Cardozo, "if years have gone by before the evidence is offered[,] [e]xperience is then available to correct uncertain prophecy.  Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within."[6]

## ARGUMENT

### I. Indiana Law Permits Use of Post-Breach Evidence to Prove Damages.

The measure of expectation damages under Indiana law is "the loss actually suffered by the breach."  Country Contractors  v. A Westside Storage of Indianapolis, Inc., 4 N.E. 3d 677, 694 (Ind. Ct. App. 2014).  The parties agree that J&J is therefore limited to damages that would result in it "being put in as good of a position as [it] would have been in had the contract been performed."  Joint Stip. ¶ 55 (citing Restatement (Second) of Contracts § 344).  J&J argues, however, that Indiana law forbids the Court from looking at post-breach evidence to determine the position J&J would have been in had it acquired Guidant.  J&J misstates Indiana law.

---

[5] E.g., Ex. 3 (March 11, 2010 Plea Agreement reflecting $296 million fine); Ex. 4 (October 17, 2013 Department of Justice press release reflecting $30 million fine).

[6] Sinclair Ref. Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 698 (1933) (Cardozo, J.).

Indiana law permits a court to consider post-breach evidence where the evidence is relevant to determining the actual value of the expected performance at the time of breach. Indeed, Indiana courts may *require* such evidence to support otherwise speculative damages like those J&J seeks here.

Because "the law disfavors a windfall,"[7] Indiana law requires the Court to consider post-breach evidence to determine what damages, if any, were *actually* caused by the contract not having been performed. E.g., Country Contractors, Inc., 4 N.E. 3d at 695-96 (reversing damages award as speculative and uncertain when the trial court calculated damages using income projections based on assumptions instead of available post-breach evidence of lower income); Indianapolis City Mkt. Corp. v. MAV, Inc., 915 N.E.2d 1013, 1020 (Ind. Ct. App. 2009) (calculating lost restaurant profits caused by delay in opening premises based on post-breach profits earned after opening); Connersville Wagon Co. v. McFarlan Carriage Co., 76 N.E. 294, 297-98 (Ind. 1905) (holding damages to be too speculative and noting relevance of whether there has been "an efflux of time making that [loss] capable of ascertainment which was wholly conjectural before."); Sinclair, 289 U.S. at 698 (holding that post-breach discovery concerning valuation was relevant to damages in a breach of contract case concerning a patent).[8]

---

[7] L.H. Controls, Inc. v. Custom Conveyor, Inc., 974 N.E.2d 1031, 1052-53 (Ind. Ct. App. 2012) (quotations omitted). See also Irving v. Ort, 146 N.E.2d 107, 110 (Ind. Ct. App. 1957) ("The fundamental rule of damages applicable to breach of contract cases is that the party injured by the breach is limited in recovery to the loss actually suffered by the breach; and he is not entitled to be placed in a better position than he would have been if the contract had not been broken.").

[8] See also Fishman v. Wirtz, 807 F.2d 520, 551-52 (7th Cir.1986) (approving use of post-breach evidence in calculating federal antitrust damages and stating that the court knew "of no case that suggests that a value based on expectation of gain is more relevant and reliable than one derived from actual gain"); A. C. Becken Co. v. Gemex Corp., 314 F.2d 839, 840 (7th Cir. 1963) ("[A] forecast of tomorrow's weather is always subject to confirmation or modification by tomorrow's observation. While the evidence at the first hearing was a reliable basis for prognostication and was legally admissible to prove damage, no one can deny that to the extent

4

J&J's motion is contrary to well-established principles of law set forth in a Restatement section to which the parties have stipulated.  Joint Stip. ¶ 55 (citing <u>Restatement (Second) of Contracts</u> § 344).  The Restatement explains, "The expectation interest is not based on the injured party's hopes when he made the contract but on the actual value that the contract would have had to him had it been performed."  <u>Restatement (Second) of Contracts</u> § 344 cmt. b, illus. 5.  The Restatement offers an illustration that aptly shows the fallacy in J&J's argument:

> A makes a contract with B under which A is to pay B for drilling an oil well on B's land, adjacent to that of A, for development and exploration purposes. **Both A and B believe that the well will be productive and will substantially enhance the value of A's land** in an amount that they estimate to be $1,000,000. Before A has paid anything, **B breaks the contract by refusing to drill the well. Other exploration <u>then</u> proves that there is no oil in the region. A's expectation interest is zero.**

<u>Restatement (Second) of Contracts</u> § 344 cmt. b., illus. 5 (emphasis added).

Post-breach evidence that the parties were mistaken as to value is not only admissible, it is essential to fulfilling the purpose of the expectation remedy: to award the *actual* value of the expected performance, not the predicted or hoped-for value of the expected performance.  <u>Id</u>.  Likewise here, Guidant is entitled to introduce evidence that Guidant was not actually worth as much to J&J—at the time of the alleged breach—as J&J once hoped, nearly a decade ago.  As the U.S. Supreme Court has explained, "[t]o correct uncertain prophecies in such circumstances

---

future events modified its correctness, the entire evidence must be considered together.").  The New York cases J&J cites are inapplicable to J&J's main damages theory, based on investment value.  The cases hold that when damages are based on fair market value, only the market price as of the day of breach may be considered.  See <u>Sharma v. Skaarup Ship Mgmt. Corp.</u>, 916 F.2d 820, 825 (2d Cir. 1990) (holding that plaintiffs' market damages from loss of tankers flowing from breach are measured by the tankers' market price on date of the breach); <u>Oscar Gruss & Son, Inc. v. Hollander</u>, 337 F.3d 186, 198 (2d Cir. 2003) (holding that plaintiff's loss from undelivered stock warrants is measured using the market price of underlying stock on the day of the breach).  To the extent these cases speak to damages based on fair market value, they reject J&J's attempt to use BSC's post-breach transaction as a market price.  See <u>id</u>.

5

[as when post-breach evidence is available] is not to charge the offender with elements of value nonexistent at the time of his offense. It is to bring out and expose of light the elements of value that were there from the beginning." Sinclair, 289 U.S. at 698.

Evidence of value post-dating the alleged breach is particularly probative here because the value J&J seeks to measure through its damages claim is value of anticipated future earnings that it expected to earn on an ongoing basis after the alleged breach. J&J quotes a treatise stating that evidence of post-breach "fluctuations in value after the breach do not affect the measure of damages," but J&J omits the following: "The rule that the appropriate date for the calculation of damages, in a breach-of-contract action, is the date of breach does not apply to anticipated profits or to other expectancy damages that, absent the breach, would have accrued on an ongoing basis over the course of the contract." 22 Am. Jur. 2d Damages § 95; Pl. Br. at 3. J&J concedes that it intended to purchase Guidant for strategic reasons and had no intention of reselling Guidant after acquiring it. See Ex. 5, Weldon Dep. 110:7-14; Ex. 6, Harris Dep. 109:24–110:11; Ex. 7, Hilton Ex. 3; Ex.8, Hilton Dep. 44:21–45:12; Ex. 9, Darretta Dep. 111:8-24; Ex. 10, Korbich Dep. 30:5-13. The claim for lost "investment value" is based on the incremental value J&J sought to realize from acquiring Guidant. Any such benefit would only have been "accrued on an ongoing basis," if at all, and therefore J&J's own source dictates that "the date of breach does not apply." 22 Am. Jur. 2d Damages § 95.[9]

---

[9] For the issues at the core of J&J's damages theory, there exists no track record prior to the alleged breach to rely upon for measuring damages—indeed, J&J argues that the issues are so dependent upon J&J's ownership as to render all events occurring under Boston Scientific's ownership "wasteful" to even consider. See Mot. at 2. Given courts' well-established reluctance to speculate as to the future outcome of new business plans, the post-breach evidence J&J seeks to exclude may very well be the *only* relevant evidence on damages. See Kenford Co. v. Erie Cnty., 493 N.E.2d 234, 261-62 (N.Y. 1986) (even using "business and industry's most advanced and sophisticated method for predicting the probable results of contemplated projects," plaintiff's

The one Indiana case J&J cites, Crestwood Park, Inc. v. Apostal, 431 N.E.2d 789, 793 (Ind. 1982), does not support J&J's argument.  In Crestwood Park, one co-owner of an undeveloped plot of land sued the other co-owner for breach of contract arising out of the defendant's actions to prevent improvement of the land.  The court held that plaintiff's "ultimate loss was not capable of ascertainment at the time of trial, for, as the evidence revealed, the moratorium on improving the lots which had been occasioned by Crestwood's breach was indefinite and continued post-trial." Id. at 793.  Only "[i]n the face of these circumstances," was it "necessary that damages be measured at the time of breach" without benefit of non-existent post-breach evidence. Id. at 793.  The court did not hold that it was improper to consider post-breach evidence, as J&J contends.  Far from it—because of the "unusual circumstances" of the case, the court *excused* plaintiff's lack of post-breach evidence that could prove his "ultimate loss."[10]  The very fact that J&J has filed a motion to exclude "at least forty trial exhibits, and perhaps testimony, pertaining to post-breach events" (Mot. at 1-2) shows that a robust record exists here of evidence post-dating any alleged breach and the "unusual circumstances" in Crestwood do not.[11]

Notably, J&J does not seek to exclude all "post-breach" evidence of value—only the evidence unfavorable to J&J.  Any alleged breach occurred, at the latest, before January 8, 2006,

---

projection of new facility's income based on operation of other similar businesses was inadequate to prove lost profits).

[10] It also bears noting that Crestwood appears to only have been cited three time since its publication in 1982, and never in connection with any issue having to do with post-breach evidence.

[11] Crestwood certainly does not contradict recent Indiana appellate court law supporting the use of post-breach evidence (Country Contractors, 4 N.E. 3d at 695-96), nor does it deviate from the U.S. Supreme Court's admonition not to ignore the "book of wisdom" of post-breach experience so as to "correct uncertain prophesy" (Sinclair, 289 U.S. at 698).

7

when Boston Scientific submitted the definitive offer to purchase Guidant for $72 per share, which J&J contends could not have occurred but for the alleged breach.[12]  See Joint Proposed Pretrial Order at 2-3.  Yet, nearly all of the direct testimony of J&J's damages witness, Professor Gregg Jarrell, relies upon supposed evidence of value post-dating January 8, 2006, including J&J's January 13, 2006 offer of $71 per share, J&J's internal valuations dated January 18, 2006, J&J's supposed consideration of making a $75 per share offer on or around January 18, 2006, and Boston Scientific's ultimate offer of $80 per share on January 17, 2006.  Ex. 11, Jarrell Aff. at ¶¶ 8-10 & n.1.  J&J has provided no reason why this evidence is any more relevant or admissible than Guidant's.[13]

## II. Guidant's Use of Evidence Post-Dating An Alleged Breach Will Not Prejudice J&J.

Citing FRE 403, J&J argues that the probative value of facts postdating the alleged breach are outweighed by the "prejudice to be triggered by the inevitable, distracting, and wasteful mini-trials over whether and to what extent Guidant's post-closing performance" reflect

---

[12] J&J does not claim that Guidant breached the Merger Agreement by not closing; there was no guarantee the Merger Agreement would close. Without shareholder approval, or in the event of a Superior Proposal, the merger could not close. See Ex. 12 (Brown Aff. at ¶ 5 ("[T]he directors of the target company cannot bind the company to close the merger without shareholder approval . . . .")); NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc., 664 N.E.2d 492, 496 (N.Y. 1996) ("[C]onsummation of the Merger Agreement represented no more than a hope that Central shareholders holding at least two thirds of the outstanding capital stock would in fact approve the transaction.").  The performance to be valued through any award of damages is the value of compliance with the non-solicitation provision, and the alleged breach was the purported facilitation of Boston Scientific's bid prior to January 8, 2006.

[13] Indeed, by citing Boston Scientific's post-breach acquisition of Guidant for $80 per share as evidence of market value, J&J's flawed damages claim relies upon an actual "post-breach" fluctuation in market value for Guidant.  Had Guidant's market value prior to any alleged breach been $80 per share, J&J could not contend to have been the but-for market winner at $63.08 per share.

"what would have happened under J&J's ownership." Mot. at 2.[14]  But J&J's damages are based on "what would have happened under J&J's ownership"—this issue is at the core of its damages claim, not a distracting or wasteful mini-trial, and it is J&J's burden to carry.  See id.

According to J&J, to consider facts post-dating an alleged breach would "invite speculation about a host of peripheral issues" concerning Guidant's value in J&J's hands, including how J&J ownership of Guidant would have impacted:  (1) "Guidant's business model," (2) "management of Guidant," (3) "the appropriate investments in the company," (4) "Guidant's expenses," (5) "resources J&J could have brought to support Guidant," (6) "integration of Guidant," and (7) the outcome of "criminal charges" and a "punitive fine" levied against Guidant based on its pre-merger activity.  Mot. at 5-6.  These are far from peripheral issues, however, as J&J's "investment value" damages are based on the unique value J&J would bring to Guidant by virtue of its influence over these same issues.  See Ex. 11, Jarrell Aff. at ¶ 6 ("Investment value is the specific value to a particular investor"); Ex. 2, Cornell Aff. at ¶ 12 (Investment value "typically refers to the value of the target when operated by the acquirer, including any incremental value the acquirer expects to realize from ownership and control").  It is J&J's burden to prove the existence and measure of this alleged, unique value to J&J with reasonable certainty.  See Shepard v. State Auto. Mut. Ins. Co., 463 F.3d 742, 745 (7th Cir. 2006).  J&J cannot fairly exclude the best evidence available—reality—in favor of J&J's outdated, self-serving predictions.  J&J's nine-year old predictions of what J&J *hoped* would happen if it

---

[14] Motions *in limine* based on FRE 403 are rarely merited in a bench trial.  See, e.g., Bic Corp. v. Far E. Source Corp., 23 F. App'x 36, 39 (2d Cir. 2001) ("For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences."); Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC, 07 CIV. 5804 (GEL), 2009 WL 959775, at *11 n.9 (S.D.N.Y. Apr. 8, 2009) (same); United States v. Am. Exp. Co., 10-CV-4496 NGG RER, 2014 WL 2879811, at *2, 8-11 (E.D.N.Y. June 24, 2014) (same).

9

acquired Guidant are far more speculative than evidence of what has *actually* occurred for the past nine years.

J&J also ignores Guidant's evidence pertaining to issues over which J&J could not plausibly have had influence that created present and future damage to Guidant and its CRM business. For example, Professor Cornell has opined that J&J's prediction that the overall market for CRM devices would grow at a rate of 13% per year "never actually materialized," and in actuality, the market only grew at a rate of 0.7%. Ex. 2, Cornell Aff. at ¶ 51-53. Under the actual historical figures, J&J's damages model would result in a net *loss* of over $11 billion. Id. at ¶ 53. J&J does not contend that its ownership of Guidant would have fundamentally altered the growth rate of the entire CRM market.

### III. Guidant Has Complied With Its Discovery Obligations and the Extreme Sanction of Exclusion Is Inappropriate.

J&J argues that Guidant's evidence contradicting J&J's damages theory should be precluded under Rule 37 because Guidant's did not identify in its initial disclosures its response to J&J's damages theory. This argument fails because Guidant had no obligation to disclose its response to J&J's damages theory, and even if it did, J&J has provided no evidence of prejudice or other basis justifying imposition of the extreme sanction of preclusion.

Under Rule 26(a), each party is required to provide a "description by category and location" of the documents and information then in its possession, custody or control that it may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Damages are addressed in a separate subsection of Rule 26(a), which states that the party claiming damages must produce its damages-related documents and provide a "computation of each category of damages

claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii).[15]  Thereafter, if the initial disclosures prove to be "incomplete or incorrect" in some "material respect," and the information "has not otherwise been made known to the other parties," the party with the disclosure obligation must supplement its initial disclosures as necessary pursuant to Rule 26(e).[16]

   J&J's argument fails because under Rule 26(a)(1)(A)(iii), Guidant had no obligation to include in its initial disclosures any information concerning J&J's non-particularized and conclusory allegations of damages.  This is apparent from the plain text of the rule, which imposes a disclosure burden only with respect to "damages claimed by the disclosing party." J&J has cited no case or other authority suggesting that Guidant had a burden to anticipate and rebut J&J's damages in its initial disclosures, and Guidant has not been able to locate any such authority.[17]

   Even if the obligation to make initial disclosures regarding damages was not expressly reserved for the party claiming damages, the more general obligation to disclose documents under Rule 26(a)(1)(A)(ii) is "limited to identification of potential evidence 'relevant to the

---

[15] Rule 26(a)(1)(A)(iii) provides that the party alleging damages must provide "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

[16] Under Rule 26(e)(2), "additions or changes" to expert disclosures are due at the time of the party's pretrial disclosures.

[17] J&J cites to only two cases in support of its argument for Rule 37 preclusion.  Neither identifies any obligation by a defendant to disclose in its initial disclosures a response to plaintiff's anticipated damages claim.  See Patterson v. Balsamico, 440 F.3d 104, 117-18 (2d Cir. 2006) (finding a violation of Rule 26(a)(3)'s pretrial disclosure requirements, where the disclosure of four witnesses was made just ten days before trial of racial discrimination claims); Topalian v. Hartford Life Ins. Co., 945 F.Supp.2d 294, 360-61 (E.D.N.Y. 2013) (finding that plaintiff had failed to identify a witness with relevant knowledge in its Rule 26(a) initial disclosures, and that the witness's affidavit could therefore not be considered on a motion for summary judgment).

disputed facts alleged with particularity in the pleadings.'" The Advisory Committee's notes explain, "[b]road, vague and conclusory allegations" should not impose upon responding parties an obligation to disclose documents concerning such a claim. J&J's allegation of damages in its pleadings of a $5.5 billion loss are vague and conclusory and did not impose on Guidant a disclosure obligation.[18] To the extent that J&J provided a further statement of its damages in the Jarrell report on January 26, 2011, Guidant responded promptly and appropriately with the expert report of Bradford Cornell on March 9, 2011.

Finally, even if Guidant had been required to disclose its response to J&J's damages claim in its initial disclosures, the "extreme sanction" of preclusion sought by J&J under Rule 37 would be inappropriate here because J&J has long known that it was not harmed by any alleged breach.[19] See Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988) ("Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses."). In assessing whether the extreme sanction of preclusion is proper under Rule 37, courts consider four factors: (1) "the explanation, if any, for the failure to name the witness or to otherwise supplement the answer," (2) "the importance of the testimony of the witness," (3) "the need for time to prepare to meet the testimony," and (4) "the possibility of a continuance." Id. at

---

[18] J&J's complaint alleged that it suffered damages "in an amount to be determined at trial, but in no event less than $5.5 billion," but did not provide a computation. When Guidant submitted an interrogatory requesting further information from J&J, J&J objected on the ground that such a request was "premature and seeks expert opinion."

[19] In contemporaneous documents, J&J's associate general counsel James Hilton testified, "it was a good thing [J&J] didn't acquire Guidant" because it would "not have been a good deal" for J&J at a price of even $71 per share. Ex. 8, Hilton Dep. 255:21–258:18. J&J similarly expressed that the party acquiring Guidant would "likely choke on the debt and liabilities," and that J&J's failure to acquire the company was "the right outcome for J&J." Ex. 13, Rosenberg Ex. 21; Ex. 14, Rosenberg Dep. 95:14-15. To J&J, Guidant was a "booby prize" that it was grateful not to acquire. Ex. 15, Morano Dep. 144:10-15; 144:19-23.

590 (quotations omitted) (reversing lower court's order of preclusion, and calling the motion to preclude, without first seeking lesser sanctions, "gamesmanship."); see also Babcock v. Rezak, No. 96–CV–0394E, 2002 WL 31654995, at *1 (W.D.N.Y. Nov. 6, 2002) (declining to preclude previously undisclosed evidence, under the factors outlined in Outley, where new counsel provided less than ninety days' notice of its intent to use an expert witness at trial). J&J has cited no prejudice and has not asked for a continuance. J&J's request for preclusion is a last minute tactical attempt to exclude evidence that cripples its speculative damages case. See Outley, 837 F.2d at 590 ("The rules of discovery were not designed to encourage procedural gamesmanship, with lawyers seizing upon mistakes made by their counterparts in order to gain some advantage.").

  Finally, J&J's suggestion that it discovered in "the past few weeks [Guidant's] intent to rely on any post-breach documents relating to Guidant's business, financial condition or value, or any testimony related to those issues," is manifestly untrue. Guidant disclosed in its March 9, 2011 expert report of Bradford Cornell that issues post-dating the alleged breach were relevant to rebutting J&J's damages allegations. Among other things, Cornell's report disclosed opinions that when actual figures are used in place of J&J's projections, the net value to J&J is negative, and J&J's attorneys asked him about this at his deposition on April 15, 2011. See J&J Ex. B. J&J also asked Cornell about Boston Scientific SEC filings that J&J now asks the Court to exclude. The parties also discussed the relevance of evidence J&J now seeks to exclude at a hearing before the Court at which J&J stated that it intended to address the damages issue by arguing that if J&J had acquired Guidant, "this wouldn't have happened"—the very argument J&J now claims would be prejudicial to require it to make. See Dkt. No. 105 (August 6, 2014 Hearing Transcript) at 3; Mot. at 5. Under these circumstances, even if Guidant had been

required under Rule 26(a) to identify its evidence opposing J&J's damages claim—and it was not—J&J has not demonstrated any proper basis for the extreme sanction it seeks. See David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003) (holding that district court had appropriately declined to preclude previously undisclosed evidence under Rule 37 because the parties had been on notice of the relevant information and had the opportunity to rebut any affirmative testimony at trial).

## CONCLUSION

For the reasons above, J&J's motion *in limine* to exclude damages evidence concerning events post-dating the alleged breach should be denied.

Dated:   October 17, 2014
         New York, New York

                                        Respectfully submitted,

SHEARMAN & STERLING LLP                 BOIES, SCHILLER & FLEXNER LLP


By:   /s/ John Gueli                    By:   /s/ Jack Wilson
      Stuart J. Baskin                        David Boies
      sbaskin@shearman.com                    dboies@bsfllp.com
      John Gueli                              William S. Ohlemeyer
      jgueli@shearman.com                     wohlemeyer@bsfllp.com
      Daniel H.R. Laguardia                   Jack Wilson
      Daniel.Laguardia@shearman.com           jwilson@bsfllp.com
                                              Ian M. Dumain
      599 Lexington Avenue                    idumain@bsfllp.com
      New York, New York 10022-6069
      (212) 848-4744 (telephone)              333 Main Street
      (212) 848-7179 (facsimile)              Armonk, New York 10504
                                              (914) 749-8200 (telephone)
                                              (914) 749-8300 (facsimile)


                                        *Attorneys for Defendant/Counterclaim Plaintiff Guidant Corporation*