UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————— x

JOHNSON & JOHNSON, a New Jersey   :
Corporation,   :
            Plaintiff,   :
  :     No. 06 CV 7685 (RJS)
       - against -   :
  :
  :     FILED UNDER SEAL
GUIDANT CORPORATION, an Indiana   :
Corporation.   :
          Defendant.   :
———————————————————— x

## JOHNSON & JOHNSON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE DAMAGES EVIDENCE CONCERNING POST-BREACH EVENTS

Harold P. Weinberger
John P. Coffey
Joel M. Taylor
Jennifer Diana
Jason M. Moff
Kramer Levin Naftalis & Frankel
LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
*Attorneys for Plaintiff Johnson &
Johnson*

Table of Contents

Page

Table of Authorities ................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 3

CONCLUSION ......................................................................................................... 7

<u>Table of Authorities</u>

<u>Page</u>

**Cases**

*Aroneck v. Atkin,*
    90 A.D.2d 966 (4th Dep't 1982) ........................................................................4

*Chris v. Epstein,*
    440 S.E.2d 581 (N.C. Ct. App. 1994) ............................................................4

*Crestwood Park, Inc. v. Apostal,*
    431 N.E.2d 789 (Ind. 1982) ........................................................................4, 5

*Gold v. Ziff Communications Co.,*
    322 Ill. App. 3d 32 (App. Ct. 2001) ............................................................4

*Levesque v. D & M Builders, Inc.,*
    365 A.2d 1216 (Conn. 1976) ........................................................................4

*McCoy v. Riley,*
    771 P.2d 25 (Colo. App. 1989) ....................................................................4

*Oscar Gruss & Son, Inc. v. Hollander,*
    337 F.3d 186 (2d Cir. 2003)..........................................................................3

*Patterson v. Balsamico,*
    440 F.3d 104 (2d Cir. 2006)..........................................................................6

*Rametta v. Stella,*
    572 A.2d 978 (Conn. 1990) ..........................................................................4

*Sharma v. Skaarup Ship Mgmt. Corp.,*
    916 F.2d 820 (2d Cir. 1990)..........................................................................4

*Shepard v. State Automobile Mutual Ins. Co.,*
    463 F.3d 742 (7th Cir. 2006) ........................................................................1

*Topalian v. Hartford Life Ins. Co.,*
    945 F. Supp. 2d 294 (E.D.N.Y. 2013) ..........................................................6

*Waxman v. Envipco Pickup & Processing Servs.,*
    No. 02 Civ. 10132, 2006 WL 1788964 (S.D.N.Y. June 28, 2006)..................5

*Wilkens v. Kaufman,*
    615 So. 2d 613 (Ala. Civ. App. 1992) ..........................................................4

Table of Authorities (Cont'd)

Page

**Statutes & Rules**

Fed. R. Civ. P. 26(a)(1)(A)(ii) ........................................................................................2, 3, 6

Fed. R. Civ. P. 26(e) ..............................................................................................................3, 6

Fed. R. Civ. P. 37(c)(1) ..........................................................................................................1, 6

Fed. R. Evid. 401 ..............................................................................................................1, 2, 5

Fed. R. Evid. 403 ..................................................................................................................1, 2

**Other Authorities**

22 Am. Jur. 2d Damages § 95 ..............................................................................................1, 3

Pursuant to FRE 401 and 403, as well as Fed. R. Civ. P. 37(c)(1), plaintiff Johnson & Johnson ("J&J") respectfully submits this memorandum of law in support of its motion *in limine* to exclude from trial any damages evidence concerning conduct or events subsequent to the breach by Guidant Corporation ("Guidant") of the Amended and Restated Agreement and Plan of Merger ("Merger Agreement") between the parties.

## PRELIMINARY STATEMENT

When J&J and Guidant entered into the Merger Agreement, J&J reasonably expected that Guidant would comply with that agreement and that it would acquire Guidant for $21.5 billion, or $63.08 per share, providing J&J Shareholders with value well in excess of that amount. As the evidence at trial will demonstrate, Guidant willfully and materially breached the Merger Agreement; consequently, J&J's reasonable expectations under the contract were not met and J&J lost the benefit of its bargain. It is well-accepted that the appropriate compensation for breach of a contract should restore the non-breaching party's expectation interest, *see Shepard v. State Automobile Mutual Ins. Co.*, 463 F.3d 742, 748 (7th Cir. 2006) (applying Indiana law) ("[t]he typical recovery for breach of contract is a party's expectation interest (i.e., the benefit of the bargain)"), and that this interest should be measured as of the time of breach, *see* 22 Am. Jur. 2d Damages § 95 (expectancy damages measured at time of breach). Events that transpire after that time, whether they in hindsight serve to increase or decrease the value of what was contracted for, are irrelevant.

Through the process of pre-trial preparations, it has become apparent that Guidant intends to introduce evidence of various events relating to Guidant occurring as long as seven years following Guidant's breach of the Merger Agreement to support a supposed damage defense that its performance during those years has not met the expectations of J&J or Boston Scientific Corporation ("BSC"). Specifically, Guidant proposes to offer at least forty trial

exhibits, and perhaps testimony, pertaining to post-breach events, ranging from its filings with the Securities & Exchange Commission, to court filings in criminal and civil cases against it and press releases describing other business and financial developments at Guidant.  These exhibits are dated between one and seven years after Guidant's breach of the Merger Agreement and concern, among other things, a $296 million criminal fine paid by Guidant and multiple goodwill impairment charges recorded by Boston Scientific totaling more than $6 billion.  *See* Schedule of Proposed Post-Breach Defense Exhibits, Declaration of Harold P. Weinberger dated October 9, 2014 ("Weinberger Decl.") Exh. A.  In addition, one of Guidant's experts, Bradford Cornell, has included among his opinions a critique of the rate of growth for cardiac rhythm management products assumed in the discounted cash flows used by J&J to value Guidant in 2005 on the ground that the actual growth rate in 2006 and since turned out to be lower.  *See* Report of Bradford Cornell, (Weinberger Decl. Ex. B) at 28-29.  All such evidence would be irrelevant to any damages question actually presented at trial and should be excluded.  *See* Fed. R. Evid. 401.

Further, even if Guidant's putative evidence of its post-closing performance were relevant to J&J's expectation damages, which it is not, that evidence must nonetheless be excluded because any limited probative value it may have is substantially outweighed by the prejudice to be triggered by the inevitable, distracting, and wasteful mini-trials over whether and to what extent Guidant's post-closing performance is attributable to its management under BSC as opposed to what would have happened under J&J's ownership.  *See* Fed. R. Evid. 403.

Finally, Guidant's attempt to use this evidence at trial violates its ongoing discovery obligation to disclose copies or descriptions of all documents it expects to use to support its claims or defenses.  *See* Fed. R. Civ. P. 26(a)(1)(A)(ii).  Under that rule, which governs parties' initial disclosures, Guidant was required to provide "a copy—or a description by

category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Guidant was also required to supplement its Rule 26(a) initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Guidant did not mention in its Rule 26(a) initial disclosures any category of documents in its custody, possession, or control even remotely touching on post-breach events. *See* Weinberger Decl. Exh. C. Nor did Guidant supplement its initial disclosures or otherwise make known prior to the past few weeks any intent to rely on any post-breach documents related to Guidant's business, financial condition or value, or any testimony related to those issues. As a result, there was no discovery with respect to any of these matters. Guidant should be precluded from introducing this evidence for this reason as well.

## ARGUMENT

It is axiomatic that "[d]amages for a breach of contract are determined as of the time of the occurrence of the breach," and that "later events such as fluctuations in value after the breach do not affect the measure of damages." 22 Am. Jur. 2d Damages § 95. *See also id.* § 95 n.1. ("The traditional rule is that expectancy damages . . . are measured at the time of the breach."). This measure of expectation damages has been deemed "eminently sensible," *see, e.g., Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003), because it "actually takes expected lost future profits into account." *Id.* Indeed, courts have "rejected awards based on what 'the actual economic conditions and performance' were in light of hindsight." *Id.* at 196.

This proposition of contract law, described by courts as "fundamental," *see, e.g.,* *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) (*citing Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145 (1971)), is well-settled and widely recognized across jurisdictions. *See, e.g.,* *Wilkens v. Kaufman*, 615 So. 2d 613, 614 (Ala. Civ. App. 1992) (applying principle in real estate context); *McCoy v. Riley*, 771 P.2d 25, 26-27 (Colo. App. 1989) (finding damages for breach of contract resulting in promisee being unable to consummate sale of property not decreased by subsequent bankruptcy of promisee); *Rametta v. Stella*, 572 A.2d 978, 983 (Conn. 1990) (finding that recovery of plaintiff in an action alleging breach of contract not diminished by extent to which plaintiff renegotiated a contract to sell the property for better terms after casualty to property); *Levesque v. D & M Builders, Inc.*, 365 A.2d 1216, 1219 (Conn. 1976) (finding damages arising from zoning ordinance violation measured as of time of sale, notwithstanding subsequent grandfathering of noncompliance); *Gold v. Ziff Communications Co.*, 322 Ill. App. 3d 32, 57 (App. Ct. 2001) (finding damages for breach of contract based on fair market business value should have been assessed at time of breach); *Aroneck v. Atkin*, 90 A.D.2d 966, 967 (4th Dep't 1982) (actual business performance subsequent to breach of contract for sale of its securities not relevant to damage valuation); *Chris v. Epstein*, 440 S.E.2d 581, 583 (N.C. Ct. App. 1994) (affirming exclusion of evidence of sales price for residential real estate one year after breach). *See also Sharma*, 916 F.2d at 825 ("It is also fundamental that, where the breach involves the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of damages.").

Indiana has followed this "eminently sensible" and "fundamental" proposition, adopting the view that post-breach events may not be considered when calculating expectation damages.  In *Crestwood Park, Inc. v. Apostal*, 431 N.E.2d 789 (Ind. 1982), for example, plaintiff

and defendant had entered into an agreement that allowed the plaintiff to improve his own property, but defendant prevented him from making those improvements. The trial court awarded damages to plaintiff, but the court of appeals reversed in part because plaintiff failed to produce evidence to establish lost profits and "to permit the damages award to stand would place [plaintiff] in a better position than he would have been in had the contract not been breached." *Id.* at 792. But the dissent argued that "the possible value of the property some four years after [defendant's] breach is evidence too conjectural in nature to be considered in measuring damages in this case." *Id.* The Indiana Supreme Court reversed, agreeing with the dissent that it was "necessary that the damages be measured at the time of the breach, without reference to subsequent fluctuations in value which might be opined through conjecture." *Id.* at 793.

Apart from being irrelevant to the parties' expectation interest, a measure of damages that looks to post-breach events would also invite speculation about a host of peripheral issues. *Cf. Waxman v. Envipco Pickup & Processing Servs.,* No. 02 Civ. 10132, 2006 WL 1788964, at *3 (S.D.N.Y. June 28, 2006) (reasoning that valuing assets at issue as of the date of the breach "reflects the true loss to plaintiffs at the time of breach, and eliminates any speculation"). In addition to raising relevance issues under FRE 401, the post breach evidence Guidant seeks to offer presents the specter of sideshow trials on myriad fact issues. Among those issues:

- Would Guidant's business model have been identical if J&J owned it than it has been under BSC's watch?
- How would J&J's management of Guidant have differed from BSC's?
- Was BSC too highly leveraged from its purchase of Guidant to make the appropriate investments in the company?
- Would Guidant's expenses have been identical?
- Would the resources that J&J could have brought to support Guidant have influenced Guidant's success?

- How much better would the integration of Guidant and BSC have been if BSC, like J&J, had spent over a year working on the integration of the two companies, instead of the abbreviated three months that BSC devoted to that task?

- Would Guidant still have faced criminal charges and pled guilty to criminal violations of the Federal Food, Drug, and Cosmetic Act?

- Would Guidant have been required to pay the largest punitive fine ever paid by a medical devices company if it had been owned by J&J?

These are just a few of many questions that would have to be addressed to assess whether Guidant's actual post-closing performance was intrinsic to its value or caused by other circumstances. They illustrate one of the reasons courts have uniformly applied the rule we urge the Court to follow here. The alternative would be a series of mini-trials that would threaten to distract the Court and the parties in wasteful examination of collateral, and irrelevant, matters.

Finally, the category of documents Guidant seeks to offer was not identified by Guidant in its initial disclosures or at any time since then. Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Guidant's failure is not harmless because it forces J&J to combat a defense intended to gut a substantial portion of J&J's damages, with J&J having had no discovery at all on the issue. Nor can Guidant provide any justification for failing to identify this category of documents initially and for the several years this case has been pending. *Cf. Patterson v. Balsamico*, 440 F.3d 104, 117-18 (2d Cir. 2006) (affirming lower court's exclusion of testimony from trial where party failed to disclose existence of witnesses or substance of their testimony during the "years" case had been pending, even where new counsel had recently appeared to represent party); *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 360-61 (E.D.N.Y. 2013) (excluding affidavit from evidence on summary judgment motion where existence of affidavit had not been disclosed prior to close of

fact discovery).  Accordingly, even if this evidence could be deemed relevant and not prejudicial,

Guidant should be precluded from offering it on this ground.

## **CONCLUSION**

For all of the foregoing reasons, J&J respectfully requests that the Court exclude

damages evidence pertaining to post-breach events.

Dated:   New York, New York
         October 10, 2014

Respectfully submitted,

Kramer Levin Naftalis & Frankel LLP

By: _____
          Harold P. Weinberger
          John P. Coffey
          Joel Taylor
          Jennifer Diana
          Jason M. Moff

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

*Attorneys for Plaintiff Johnson & Johnson*