UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
JOHNSON & JOHNSON, a New Jersey : 
Corporation :
 :
       Plaintiff, :     No. 06 CV 7685 (RJS)
 :
     - against - :
 :
GUIDANT CORPORATION, an Indiana :
Corporation, :
 :
       Defendant. ::
---------------------------------------------------------------- x

## JOINT PROPOSED PRETRIAL ORDER

Pursuant to the Court's order of August 6, 2014, Plaintiff Johnson & Johnson ("J&J") and Defendant Guidant Corporation ("Guidant") respectfully submit this Joint Proposed Pre-Trial Order. Each party respectfully reserves the right to request leave of the Court to amend the information contained herein, upon reasonable notice to the other party, should the facts and circumstances of this Action so require.

  1.    The full caption of the instant action is set forth above.

  2.    The names, addresses (including firm names), and telephone numbers and email addresses of trial counsel are as follows:

Counsel for Plaintiff Johnson & Johnson

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100 – Telephone
(212) 715-8000 – Fax
Harold Weinberger (212-715-9132; hweinberger@kramerlevin.com)
John P. Coffey (212-715-9456; scoffey@kramerlevin.com)
Joel Taylor (212-715-9335; jtaylor@kramerlevin.com)

Jennifer Diana (212-715-9478; jdiana@kramerlevin.com)
Jason Moff (212-715-9113; jmoff@kramerlevin.com)

Counsel for Defendant

BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200 – Telephone
(212) 446-2350 – Fax
David Boies (914-749-8200; dboies@bsfllp.com)
William S. Ohlemeyer (914-749-8440; wohlemeyer@bsfllp.com)
Jack Wilson (914-749-8238; jwilson@bsfllp.com)
Ian M. Dumain (914-749-8210; idumain@bsfllp.com)

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000 – Telephone
(212) 848-7179 – Fax
Stuart J. Baskin (212-848-4974; sbaskin@shearman.com)
John Gueli (212 848-4744; jgueli@shearman.com)
Daniel H.R. Laguardia (212-848-4731; Daniel.Laguardia@shearman.com)

3. <u>Subject Matter Jurisdiction</u>: The parties agree that the Court has diversity jurisdiction over the subject matter of this Action because this dispute arises between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

4. <u>Summaries of Claims and Defenses</u>:

(a) *Plaintiff:*

J&J alleges that Guidant willfully and materially breached its amended and restated merger agreement with J&J (the "Merger Agreement"); that Guidant's various breaches were a substantial factor in the harm suffered by J&J; and that J&J should be awarded approximately either $4.3 or $5.4 billion in damages in compensation for that harm.

Specifically, Guidant breached Section 4.02 of the Merger Agreement when:

-- it secretly supplied confidential business information to Abbott Laboratories ("Abbott") and purposely concealed that and other material facts from J&J, thereby facilitating a rival and ultimately successful bid by Boston Scientific Corporation ("Boston Scientific");

-- it entered into a confidentiality agreement with Boston Scientific that was less restrictive than the confidentiality provisions of the confidentiality agreement between J&J and Guidant, which allowed Boston Scientific to share Guidant's confidential business information with Abbott; and

-- it entered into a joint defense agreement with Boston Scientific and provided confidential documents to the Federal Trade Commission ("FTC"), further facilitating Boston Scientific's offer by allowing it to demonstrate that Boston Scientific would be able to achieve prompt FTC approval for its acquisition of Guidant.

As a result of these breaches, Boston Scientific was able to make a definitive offer that it would not otherwise have made, Guidant's Board of Directors determined that offer to be a Superior Proposal (as the term is defined in the Merger Agreement) and, on that basis, Guidant terminated the Merger Agreement.

Section 4.02 was designed to protect the terms of the bargain that J&J and Guidant had struck in the Merger Agreement by prohibiting Guidant from cooperating in any way with any Takeover Proposal (as that term is defined in the Merger Agreement), including by furnishing information to any person making such a proposal. If, but only if, in response to a bona fide, unsolicited Takeover Proposal, Guidant's Board of Directors determined that it was reasonably likely to lead to a Superior Proposal, the only action Guidant was permitted to take was to furnish information to the "person" making

that proposal and its "Representatives," pursuant to a confidentiality agreement "not less restrictive to such person than the confidentiality provisions" of the confidentiality agreement Guidant had entered into with J&J. That would allow the competing bidder to decide if it wanted to make a definitive, binding offer. Guidant was also required to promptly advise J&J of the identity of the person making the Takeover Proposal and provide J&J with the same information it was divulging to the bidder. Guidant was not permitted to do anything else to facilitate that proposal.

Abbott was neither a person making a Takeover Proposal nor a Representative of Boston Scientific. Rather, Abbott was a party to whom Boston Scientific was interested in divesting certain assets in order to secure antitrust approval from the FTC for its proposed acquisition and was thus not a permitted recipient of such information. Guidant's execution of a less restrictive confidentiality agreement with Boston Scientific, i.e., one that permitted the latter to provide Guidant's non-public information to Abbott, and Guidant's provision of confidential information to Abbott, were breaches of Section 4.02. Similarly the oral joint defense agreement entered into between Guidant and Boston Scientific, which enabled Boston Scientific to strategize with Guidant about how Boston Scientific would obtain FTC approval if Boston Scientific were to make a definitive offer, and Guidant's voluntary provision of confidential information to the FTC after the definitive offer but before termination of the Merger Agreement, were not permitted by that section. Each of these breaches of the Merger Agreement was designed to and did allow Boston Scientific either to make a definitive offer that it otherwise would have been unwilling to make and/or to make that offer more likely to be deemed a Superior Proposal by Guidant.

Guidant's breaches of the Merger Agreement to facilitate Boston Scientific's competing bid go to the heart of J&J's bargain with Guidant, which was to insure that its agreement to acquire Guidant would not be used as a "stalking horse" to facilitate a higher bid and, ultimately, a bidding war. Provisions like Section 4.02, which are common in Merger Agreements involving public companies, are designed to permit companies that have agreed to be acquired to meet their fiduciary obligations to their shareholders by being able to consider better offers, not to allow them to facilitate the making of such offers or to make them more acceptable. In the hopes of prompting a bidding war that would substantially increase the price at which it had agreed to be bought by J&J, that is precisely what Guidant did here.

Guidant knew full well that Abbott, as a potential purchaser of assets to be divested, was not entitled to due diligence. Under pressure from Boston Scientific to nonetheless make confidential information available to Abbott, Guidant required Boston Scientific and Abbott to sign an Accession Agreement in which Abbott was characterized as having been "retained by Boston Scientific to advise it in connection with a potential transaction," a characterization Guidant, its attorneys, Boston Scientific and Abbott all knew was false. To hide its decision to provide confidential information to Abbott in violation of Section 4.02, Guidant then misrepresented to J&J that diligence had been provided to "Boston Scientific or their advisors," when Guidant knew that confidential information had in fact been provided to Abbott. Guidant's claim that it relied on advice from its counsel that Abbott, as a potential purchaser of assets to be divested, was a "Representative" of Boston Scientific (advice that Guidant's general counsel did not even recall) is belied by these facts; moreover, reliance on any such advice would not have

been reasonable. As to the joint defense agreement and the provision of documents to the FTC, Guidant does not even attempt to argue that it relied on any advice of counsel, instead asserting that due diligence may be shared by a target under contract with "anyone who is a necessary participant in a takeover proposal," a position that has no support in the language of Section 4.02 and has already been rejected by Judge Lynch.

Guidant's efforts after its breaches were discovered and in the course of this litigation to develop post-hoc rationales as to why its actions did not breach the Merger Agreement only serve to illustrate the lack of merit of its "reliance on counsel" defense. Moreover, none of these purported justifications have any legal or factual basis. Abbott did not make a bona fide Takeover Proposal at all, and certainly not one that qualified it to receive due diligence. No such proposal was approved by Guidant's board or disclosed to J&J; indeed Abbott insisted that its potential involvement could not be disclosed. Nor was Abbott a co-bidder, a status that also would have been required to be disclosed to J&J. In the words of its inside counsel, Boston Scientific, the only party that made a qualifying Takeover Proposal to Guidant, wanted "to control its own destiny." No proxy statement or other public filing by Boston Scientific, Guidant or Abbott disclosed either role for Abbott in describing the proposed merger and divestiture.

Guidant's breaches were material. Boston Scientific's tentative merger proposal contemplated the divestiture of certain assets that Boston Scientific knew needed to be sold to resolve antitrust issues it believed would result in Guidant's rejection of any offer it made if not addressed. Boston Scientific could have agreed to divest these assets after executing a merger agreement with Guidant if required to by the FTC, which is what happens in most of these situations. But Boston Scientific did not want to take the risk of

signing a binding agreement with Guidant and then not getting the price it wanted for those assets. For its part, Abbott would not have entered into the divestiture agreement with Boston Scientific had it not received the confidential information provided by Guidant. Without a binding commitment from Abbott, the Boston Scientific board would not have authorized the definitive offer. Boston Scientific also wanted to get comfort from the FTC that its proposed solution to the antitrust issue would be acceptable and quick, which it knew was important to Guidant, and, with the help of the joint defense agreement, devised a strategy with Guidant to provide Guidant non-public documents to the FTC to facilitate that objective. Boston Scientific then used the feedback it got from the FTC to persuade Guidant that it could obtain prompt antitrust approval if its definitive offer was accepted. As a direct result of these willful and material breaches by Guidant, J&J lost the opportunity to acquire Guidant at $63.08/share.

J&J made reasonable and diligent attempts to mitigate its damages, including by notifying Guidant orally that J&J considered it to be in breach of the Merger Agreement the day that it learned that Guidant had given Abbott confidential business information and again in writing two days before Guidant terminated the Merger Agreement. Although Guidant could have obtained a legal opinion from an independent firm, or sought a declaratory judgment or simply proceeded with the Merger Agreement, it did none of those things because, in the words of its general counsel, it believed J&J's position was "lame." J&J also tried to mitigate its damages by engaging in a bidding contest with Boston Scientific, but lost out to Boston Scientific's $80 per share bid.

Guidant's contention that J&J cannot show that Guidant's shareholders would have approved the Merger Agreement assumes, contrary to the facts, that Boston

Scientific would have made a definitive offer absent Guidant's breaches and ignores the fact that it was Guidant's breaches that prevented that vote from occurring. Accordingly, J&J is entitled to recover damages to obtain the benefit of its bargain. The most appropriate way to calculate that benefit is based on J&J's reasonable expectation that Guidant's value to it was $4.3 billion more than the contract price, reflected by the amount it was prepared to bid once Boston Scientific made a definitive offer. Alternatively, J&J is entitled to recover the amount of $5.4 billion based on the fair market value of Guidant, as measured by the $80 price per share paid by Boston Scientific, minus the contract price J&J had bargained for, $63.08/share, minus the $705 million termination fee that J&J received once Guidant terminated the Merger Agreement. Neither of these measures is speculative, particularly under the "wrongdoer" rule that applies under governing Indiana law.

(b) *Defendant:*

Guidant did not breach the Merger Agreement by providing due diligence materials to Abbott. Even assuming that a breach did occur, such a breach was neither "wilful" nor "material" under the terms of the Merger Agreement, and J&J suffered no damages. To the extent that J&J alleges that Guidant breached the Merger Agreement by failing to provide notice of Abbott's identity prior to January 9, 2006, such an alleged breach is neither "wilful" nor "material," and J&J suffered no resulting damages.

The Merger Agreement was not an agreement for J&J to acquire Guidant. Rather, the "heart" of the Merger Agreement between Guidant and J&J was that J&J would submit an offer to Guidant. Guidant, particularly through its shareholders,

would consider that offer, and would not actively seek superior offers from third parties. Guidant abided by that agreement.

The Guidant Board did not solicit the Boston Scientific transaction. But once Boston Scientific expressed and acted on its intention to make a definitive offer for Guidant, the Guidant Board acted appropriately in furtherance of its permissible duties under the Merger Agreement. Contrary to J&J's allegations, the Merger Agreement permitted Guidant to provide confidential business information about itself to Abbott because Abbott was properly understood to be a "Representative" of Boston Scientific under the terms of the Merger Agreement. The Merger Agreement permitted Guidant to divulge such information once it had been approached by a third party such as Boston Scientific, and the term "Representative" is commonly understood among mergers and acquisitions practitioners to include parties like Abbott. A contrary interpretation would effectively render the Merger Agreement an impermissible "lock-up." The Merger Agreement could not be – and never purported to be – "locked up." Section 4.02 allowed the Guidant Board to fulfill its fiduciary duties to its shareholders.

Once Guidant had been approached by Boston Scientific, it entered into a confidentiality agreement that was no less restrictive than the confidentiality provisions of the confidentiality agreement between Guidant and J&J. This confidentiality agreement was prepared and approved by Guidant's counsel, and Guidant's counsel acted reasonably in clarifying that divestiture buyers and financing partners of Boston Scientific could receive confidential business information in connection with Boston Scientific's proposed bid.

As Guidant acted on the advice of counsel in entering into the confidentiality agreement and supplying confidential business information to Abbott (including with respect to the provision of that information pursuant to an Accession Agreement drafted by its counsel), it did not commit a "wilful" breach of the Merger Agreement. Guidant undertook a reasonable inquiry to understand and comply with its obligations and did not act with knowledge that a breach would ensue from its conduct, as is required for liability to survive termination of the merger agreement.

Further, Guidant did not materially breach the Merger Agreement by providing confidential business information about itself to Abbott.

Even if Guidant had breached the Merger Agreement by providing confidential business information about itself to Abbott, and even if that breach was "wilful and material," J&J has failed to demonstrate that any alleged breach caused any damages to J&J. J&J is not entitled to expectation damages for a breach of the Merger Agreement. In any event, the expectation damages it seeks are too speculative and cannot be proven to a reasonable certainty. J&J has not demonstrated a valid basis for its assumption that it would have acquired Guidant at the low price of $63.08 per share, nor is J&J entitled to be put in a better position than it would have been but for the alleged breach. Moreover, J&J failed to appropriately mitigate its damages by appropriately and promptly notifying Guidant of its intention to treat the provision of confidential business information to Abbott as a material breach, or seeking to prevent the closing of the transaction between Guidant and Boston Scientific. For these same reasons, J&J should be estopped from recovering damages. If J&J had notified Guidant of its intention to treat its conduct as a material breach,

Guidant's Board or shareholders could have pursued alternative means to ensure compliance, or could have rejected Boston Scientific's competing bid, as J&J was otherwise encouraging them to do, in order to avoid J&J's current multi-billion-dollar lawsuit.

Independent of whether Abbott is classified as a "Representative" of Boston Scientific under the terms of the Merger Agreement as described above, however, Abbott was entitled to receive confidential business information in connection with a Takeover Proposal under the Merger Agreement, either as a bidder or co-bidder for Guidant's assets.

First, Abbott could reasonably be considered to be a co-bidder in connection with Boston Scientific's Takeover Proposal. This proposal from Boston Scientific included a clear placeholder for a divesture buyer such as Abbott. As J&J knew, Abbott was likely to become that divesture buyer.

Second, Abbott can be considered to be a bidder in connection with its own Takeover Proposal, as that term is broadly defined in the Merger Agreement. Abbott made its own inquiry relating to a direct or indirect acquisition, in one transaction or a series of transactions, of assets that constitute 15% or more of the revenues, net income or assets of Guidant.

Because Abbott can be considered either a bidder or co-bidder, Guidant was entitled to supply Abbott with confidential business materials. While it is true that Guidant was required to "promptly" provide J&J with notice of the identity of a party submitting a Takeover Proposal, any breach of this provision was not wilful because Guidant acted on the advice of counsel in supplying Abbott with the information as a

"Representative" of Boston Scientific. By supplying the information to Abbott as a "Representative" of Boston Scientific, Guidant had no reason to believe that the notice provision applied. Such a breach was also immaterial, because the "prompt[]" notice provision did not constitute the "heart" of the Merger Agreement. Finally, any failure to "promptly" disclose Abbott's identity caused no damages to J&J.

Finally, Guidant did not offend the Merger Agreement by entering into a joint defense agreement with Boston Scientific and providing confidential business information to the Federal Trade Commission ("FTC"). This is because the Merger Agreement allows due diligence material to be shared with anyone who is a necessary participant in a Takeover Proposal. Furthermore, the provision of due diligence material was clearly for regulatory review of the deal, not to actively solicit a deal, and therefore does not breach the no-solicitation clause. Moreover, there is no credible evidence indicating that Guidant knew that entering into a joint defense agreement with Boston Scientific or supplying due diligence materials to the FTC would result in a breach, or that either action was material or resulted in damages to J&J.

5.   <u>Number of Trial Days</u>:  Plaintiff expects that its case-in-chief and anticipated rebuttal (including Defendant's anticipated cross-examination) will take approximately five trial days.  Defendant expects that its case-in-chief (including Plaintiffs' anticipated cross-examination) will take approximately five trial days.

6.   <u>Stipulations</u>: The parties' stipulations of fact and law are attached at Exhibit A.

7.   <u>Witnesses</u>:  The lists of witnesses whose testimony will be offered in the respective cases-in-chief are:

(a)  *Plaintiff*:

1. Lawrence Best, BSC CFO, through deposition excerpts;

2. Robert Bicknese, BSC financial advisor from Bear Stearns, by live testimony (adverse witness);

3. John Coates, Plaintiff's M&A Expert, by affidavit;

4. Russell Deyo, J&J General Counsel, by affidavit;

5. Brian Duwe, Skadden partner/GDT outside deal counsel, through deposition excerpts;

6. Deborah Feinstein, Arnold & Porter partner/BSC outside anti-trust counsel, through deposition excerpts;

7. Laura Gunther, ABT in-house counsel, through deposition excerpts;

8. Alan Hartman, BSC financial advisor from Merrill Lynch, by live testimony (adverse witness);

9. James Hilton, J&J in-house counsel, through deposition excerpts;

10. Kenneth Hitchner, J&J financial advisor from Goldman Sachs, by deposition excerpts;

11. Greg Jarrell, Plaintiff's Damages Expert, by affidavit;

12. Ian John, Skadden partner/GDT outside anti-trust counsel, by live testimony (adverse witness);

13. Lawrence Knopf, BSC General Counsel, through deposition excerpts;

14. Clare O'Brien, Shearman & Sterling partner/BSC outside deal counsel, by live testimony (adverse witness);

15. Neal Stoll, Skadden partner/GDT outside anti-trust counsel, by live testimony (adverse witness);

16. Robert Townsend, Cravath partner/J&J outside counsel, by affidavit; and

17. William Weldon, J&J CEO, by affidavit.

(b) *Defendant:*

1. Lawrence Best, Boston Scientific Chief Financial Officer,* through deposition excerpts;

2. Meredith Mason Brown, Guidant's M&A Expert, by affidavit;

3. Dominic Caruso, J&J Head of Group Finance, through deposition excerpts;

4. Bradford Cornell, Guidant's Damages Expert, by affidavit;

5. Robert Daretta, J&J CFO and Vice Chair, through deposition excerpts;

6. Russell Deyo, J&J General Counsel and Executive Committee member, through deposition excerpts;†

7. Brian Duwe, Skadden M&A partner/ Guidant outside deal counsel, through deposition excerpts;

8. Deborah Feinstein, Arnold & Porter antitrust partner/Boston Scientific outside antitrust counsel, through deposition excerpts;

9. Laura Gunther, Abbott Laboratories Division Counsel and Federal Rule of Civil Procedure 30(b)(6) designee, through deposition excerpts;

10. Eric Harris, J&J Chief Antitrust Counsel, through deposition excerpts;

11. James Hilton, J&J Associate General Counsel, through deposition excerpts;

12. Kenneth Hitchner, Goldman Sachs partner/ J&J financial advisor, by deposition excerpts;

13. Ian John, Skadden antitrust lawyer/ Guidant outside deal counsel, by affidavit;

14. Lawrence Knopf, Boston Scientific Senior Vice President and Deputy General Counsel, through deposition excerpts;

15. William Korbich, J&J Vice-President, Procurement Leadership Team, through deposition excerpts;

16. Bernard Kury, Guidant General Counsel, by affidavit;

17. Charles Mulaney, Skadden M&A partner/ Guidant's outside deal counsel, by affidavit;

    18.    Susan Morano, J&J Vice-President, Business Development, through deposition excerpts;

    19.    Steven Rosenberg, J&J Associate General Counsel, through deposition excerpts;

    20.    Neal Stoll, Skadden antitrust partner/Guidant's outside deal counsel, by affidavit;

    21.    James A. Strain, Guidant's Indiana M&A Expert, by affidavit; and

    22.    William Weldon, J&J Chief Executive Officer, Chairman, and Executive Committee member, through deposition excerpts;[†]

8.    <u>Deposition Testimony</u>: The parties' deposition transcript designations to be offered in their cases-in-chief, as well as cross-designations and objections are attached at Exhibits B (Plaintiff) and C (Defendant).

9.    <u>Exhibits</u>: List of exhibits to be offered by the parties in their respective case-in-chief, with indications of objections and a brief statement of the nature of the objections, are attached at Exhibits D (Plaintiff) and E (Defendant).

10.    <u>Motions in *Limine*</u>: The *limine* motions filed concurrently with this joint proposed pre-trial order are as follows:

    (a)  *Plaintiff*:

        (i)    A Daubert motion to exclude (A) the testimony of Defendant's purported experts Meredith Mason Brown and James A. Strain, and (B) part of the testimony of Defendant's purported expert Bradford Cornell; and

---

[†] Admissible by Guidant (as an adverse party) against J&J for any purpose under Federal Rule of Civil Procedure 32(a)(3), even if the deponent is available and testifies live at trial, because the deponent was an officer of J&J at the time he was deposed.

      (ii)    A motion pursuant to FRE 401, FRE 403 and FRCP 37(c)(1) to exclude any purported damages evidence relying on post-breach events.

(b) *Defendant:* None

Dated: October 10, 2014
New York, New York

                        Respectfully submitted,

                        KRAMER LEVIN NAFTALIS & FRANKEL LLP

                        By:  /s/ Harold Weinberger
                              Harold Weinberger
                              John P. Coffey
                              Joel Taylor
                              Jennifer Diana
                              Jason Moff

                              1177 Avenue of the Americas
                              New York, NY 10036
                              Telephone: (212) 715-9100
                              Facsimile: (212) 715-8000

                        *Counsel for Plaintiff Johnson & Johnson*

Dated: October 10, 2014
New York, New York

        SHEARMAN & STERLING LLP

        By: /s/ John Gueli
            Stuart J. Baskin
            sbaskin@shearman.com
            John Gueli
            jgueli@shearman.com
            Daniel H.R. Laguardia
            Daniel.Laguardia@shearman.com

        599 Lexington Avenue
        New York, NY 10022-6069
        Telephone: (212) 848-4000
        Facsimile: (212) 848-7179

        BOIES, SCHILLER & FLEXNER LLP

        By: /s/ William S. Ohlemeyer
            David Boies
            dboies@bsfllp.com
            William S. Ohlemeyer
            wohlemeyer@bsfllp.com
            Jack Wilson
            jwilson@bsfllp.com
            Ian M. Dumain
            idumain@bsfllp.com

        333 Main Street
        Armonk, NY 10504
        Telephone: (914) 749-8200
        Facsimile: (914) 749-8300

*Attorneys for Defendant/Counterclaim Plaintiff Guidant Corporation*